MARY BAUMAN, RESPONDENT, v. THE WESTERN AND SOUTHERN INDEMNITY COMPANY, A CORPORATION, APPELLANT.—77 S. W. (2d) 496.

St. Louis Court of Appeals. Opinion filed December 31, 1934.

836

*Wm. R. Schneider* and *P. M. Wishon* for appellant.

*Otis M. Gallant* and *Marion J. Hannigan* for respondent.

McCULLEN, J.—This action was instituted by respondent under Section 5899, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 5899, p. 4500), to recover from appellant the sum of $5000 with interest. The action is based upon a judgment in the sum of $7500 rendered in favor of respondent and against one M. S. Baird on account of personal injuries sustained by respondent on March 9, 1932,

and upon a policy of liability indemnity insurance which had been issued to the said M. S. Baird by appellant prior to that date. A trial before the court resulted in a judgment in favor of respondent and against appellant for the amount sued for with interest, making a total of $5150 and costs. The case comes to this court by appeal.

Section 5899, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 5899, p. 4500), provides that upon the recovery of a final judgment against any person, firm or corporation by any person for loss or damage on account of bodily injury, if the defendant in such action was insured against said loss or damage at the time the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in such contract of insurance applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date of its rendition, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of such judgment.

The evidence shows that respondent sustained bodily injuries on March 9, 1932, when she was struck by a motorbus owned by M. S. Baird, who was appellant's assured in the liability insurance policy which was then in force and effect.

The policy insured Baird against loss from liability imposed by law upon him for damages by reason of the ownership, maintenance, or use of the motorbus which was involved in the accident. The liability of appellant for bodily injuries or death of one person was limited in the policy to $5000; the limit for one accident was $20,000. The policy contained the usual clause whereby the appellant agreed to give prompt and efficient service in investigating accidents and claims; in negotiating for settlement of or in contesting any such claims; in defending any suit, even if groundless, brought against Baird to enforce a liability covered by the policy, unless the appellant should elect to settle such suit; to pay, in addition to damages, all expenses incurred by the appellant for investigation; cost of legal proceedings defended by the appellant. Other provisions contained in the policy need not be mentioned here as they are not involved in this controversy.

Among the general conditions of the policy was a cooperation clause, which provided that upon the occurrence of an accident, the filing of a claim or the bringing of a suit covered by the policy the assured should give immediate written notice thereof to appellant, and immediately forward all information obtainable at the time, together with any documents, summons, process or other papers delivered to or served upon the assured. It was further provided therein that whenever requested by the appellant:

"The assured shall aid in effecting a settlement, obtaining informa-

tion and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible cooperation and assistance.''

Respondent brought her suit for damages in the Circuit Court of St. Louis County against Mert S. Baird, appellant's assured, who resided and had his place of business in said county. Appellant undertook to represent Baird in the defense of that suit in accordance with the terms of its policy, and in due time filed an answer on behalf of Baird therein. When that case was called for trial on November 29, 1932, Mr. Baird, defendant therein, failed to appear. At the request of appellant's attorneys who were representing Baird, in accordance with the provisions of the policy, the case was passed by the court to December 12, 1932, on which date Mr. Baird again failed to appear in court, and appellant, through its attorneys, withdrew from the case, setting forth in a stipulation, filed in the court that day, appellant's reasons for such withdrawal. The stipulation after reciting, among other matters, the efforts made by appellant to have Mr. Baird appear on the two dates when the case was set for trial, and his failure to do so, concluded by stating that Baird had thereby breached the cooperation clause of the policy. On the same date that appellant withdrew, the trial court laid the case over to December 14, 1932, on which date, according to the record, plaintiff therein appeared in person and by attorney and defendant Baird failed to appear although having answered. The court after a trial rendered its finding and judgment for plaintiff therein (respondent here) and against Baird as defendant in the sum of $7500 and costs.

The judgment against Baird in the damage suit became final and was not satisfied within the thirty day period provided in the statute, and thereafter respondent, as Baird's judgment creditor, brought this action against appellant.

Appellant contends that the court ignored the cooperation clause of the policy, and, therefore, erred in entering judgment for respondent. It is insisted by appellant that under the evidence showing that Baird, the assured, failed to comply with the terms of the cooperation clause, the judgment should have been for appellant.

Respondent contends on the contrary that the question as to whether or not the assured did comply with the cooperation clause of his policy was one of fact to be decided by the court, and that if the trial court's findings are supported by substantial evidence, this court should not interfere with such findings.

The statute under which this suit was brought designates the action as one in equity. It is well settled that in an equity suit, where there is a final judgment by the trial court, an appellate court is not bound by the findings of the trial court, and if it is not satisfied with such findings it will make its own findings of fact and render

such judgment as the trial court should have rendered. [Noell v. Remmert, 326 Mo. 148, 30 S. W. (2d) 1009, 1013; Neville v. D'Oench, 327 Mo. 34, 34 S. W. (2d) 491; Krug v. Bremer, 316 Mo. 891, 292 S. W. 702.

Appellant in its defense in the case at bar pleaded that Baird, its assured, failed to cooperate with appellant in the defense of the damage suit brought against him by respondent whereby he breached the cooperation clause of the policy, and by reason thereof respondent was not entitled to recover a judgment for any sum against appellant.

The evidence shows that Mert S. Baird, appellant's assured, was the owner of a number of motorbusses, one of which, while being operated by Roy Chapel, one of Baird's chauffeurs, struck and injured respondent. It is conceded that Baird was not on or near the motorbus at the time respondent was injured, and was, therefore, not an eyewitness to the accident. When the deposition of Roy Chapel, driver of the motorbus, was taken in the damage suit it appears to have been admitted by appellant that Baird was the owner of the motorbus involved therein.

The question presented by this record, and upon which this case must be determined, is whether or not the conceded failure of Mert S. Baird to appear in court at the trial of the damage suit brought against him by respondent was such a breach of the cooperation clause of the policy as to release appellant from its obligation to pay the amount named in the policy.

Many cases have been decided by appellate courts in various states involving the rights of injured persons to recover, upon judgments against insured persons, from insurers whose policies covered the loss sustained by the assured. Some of them were garnishment proceedings, while others were based upon special statutes or upon provisions of the insurance policy itself. The opinions in such cases show that regardless of the manner in which such actions were brought, and notwithstanding differences in the statutes in various states, there are certain well defined general principles which are applicable in determining whether or not an assured breached the cooperation clause of his policy so as to bar a recovery from an insurer by an injured person who has procured a judgment against the assured.

It has been held that where an injured person has recovered a judgment against an assured, and such person brings an action upon the judgment to recover the amount thereof from an insurance company whose policy covered the loss, the insurance company may assert any defense against the injured person which it might have asserted as a defense in an action brought against it by its assured. [Schoenfeld v. New Jersey Fidelity & Plate Glass Ins. Co., 197 N. Y. Supp. 606. See also Huddy Encyclopedia of Automobile Law, Vols. 13-14, section 325, and cases there cited.]

It has also been held that under what is generally called the cooperation clause in a policy wherein the assured is required to assist in the defense of actions brought against him, he is bound in good faith to render assistance in the trial of such actions and in making every legitimate defense thereto. [Francis v. London Guarantee & Accident Co., Ltd. (Vt.), 138 Atl. 780; United States Fidelity & Guaranty Co. v. Williams, 148 Md. 289, 129 Atl. 660, 666.]

The unexcused failure of an assured to cooperate with an insurance company in accordance with the conditions of the policy is sufficient to release the insurance company from liability on the policy, provided there be no bad faith on the part of the insurance company, and provided the condition requiring the assured's cooperation with the insurer was breached by a material lack of cooperation. [Bassi v. Bassi, 165 Minn. 100, 205 N. W. 947; Finkle v. Western Automobile Ins. Co., 224 Mo. App. 285, 26 S. W. (2d) 843, 846.]

In a well considered recent case the Supreme Court of California in banc held that a violation by an assured of the cooperation provision of a liability policy by failing to cooperate in obtaining information and witnesses, and failing to attend the trial to testify, after the assured had made a report of the accident in which he indicated that a defense existed, was prejudicial to the insurer so as to contitute a defense in an action which was brought by the injured person under the California statute. That statute required such an insurance policy to contain a provision to the effect that the injured person may bring an action against the insurer on the policy, subject to its terms and limitations, to recover on a judgment secured by the injured person against the assured. [Hynding v. Home Accident Ins. Co., 214 Cal. 743, 7 Pac. (2d) 999.]

After the decision in Hynding v. Home Accident Ins. Co., supra, a district court of appeal of California had before it a case involving a policy which contained a cooperation clause somewhat similar to the one in the case at bar, which required that the assured report accidents, claims, suits, and cooperate with the insurance company in securing information, evidence and attendance of witnesses. The assured in that case failed to appear at the time of the trial of the personal injury action. Numerous continuances had been ordered because of his absence or inability to be present. The district court of appeal in that case said that the principal question was whether or not a person injured by the automobile of another may, after judgment against the latter for damages, recover from his insurers upon a policy containing such a cooperation clause where there had been unquestionably a violation of such clause.

Basing its decision and opinion squarely upon Hynding v. Home Accident Ins. Co., 214 Cal. 743, 7 Pac. (2d) 999, the district court of appeal affirmed the action of the trial court in rendering judgment

for the defendant insurance company. [McDaniels v. General Ins. Co. of America, et al. (Cal. App.), 35 Pac. (2d) 394.]

In Finkle v. Western Automobile Insurance Co., 224 Mo. App. 285, 26 S. W. (2d) 843, this court had before it a case involving a policy of insurance in which there was a cooperation clause similar to the one in the case at bar. The case was a garnishment proceeding in aid of an execution on a judgment for damages for personal injuries growing out of an automobile accident wherein the loss was covered by a policy of liability insurance which had been theretofore issued by the garnishee to the damage suit defendants. In an opinion written by Commissioner BENNICK, this court said, l. c. 846:

"Aside from the obligations arising from the law of contracts, it is at once apparent that a condition of a policy requiring the cooperation and assistance of the assured in the defense of the action brought against him by the injured party is of the utmost importance in a practical sense, for, without the presence of the assured, and his aid in the preparation of the case for trial, the insurance company is greatly handicapped even to the point that such lack of cooperation may result in making the action incapable of defense. Consequently, we know of no dissent to the view that, as between the assured and the insurance company, the unexcused failure of the assured to comply with the condition of the policy requiring cooperation serves to prevent his recovery under the policy of the amount of the judgment, if paid by him. [Citing cases.]"

The language above quoted was based upon a resume of cases decided by courts in various states in which cooperation clauses in policies of liability insurance were involved. Since that opinion was written, no case has been decided in this State or in any other state, as far as we know, which would warrant a change in the view thus expressed.

Respondent herein cites and relies upon the above Finkle case in support of her contention that it was a question for the trier of the facts to decide whether or not Baird, the assured in the case at bar, failed to cooperate with appellant in the defense of the damage suit against him. Aside from the question as to whether or not the rule contended for by respondent is applicable in this case, which, under the statute is an equity case, we do not believe the Finkle case supports respondent's contention in this case.

It is true the conclusion reached on the facts in the Finkle case was that there was a clear cut issue for the jury to pass upon, and it is also true that the judgment of the circuit court in favor of the plaintiff therein and against the garnishee insurance company was affirmed. We are satisfied, however, that the facts in the case at bar are clearly distinguishable from the facts in the Finkle case. In that case the court, reviewing the evidence, referred to a number of in-

stances and facts showing that it was an open question whether the garnishee had used diligence to secure the attendance of their assureds at court. It was pointed out in the opinion that from June, 1926, until April, 1927, the garnishee's counsel concededly made no effort to get in touch with its assureds. After referring to a number of instances tending to show lack of diligence on the part of the garnishee therein, the court in that case declared that there was room in the evidence for the belief that at the time the garnishee's attorney was sending his last series of letters to the old address of the assureds, he either knew, or was chargeable with knowledge, that they had gone to the east and that he might have known, if he did not, that they were located in the city of New York. It was also pointed out in the opinion in the Finkle case that the garnishee had made no attempt, until eighteen months after the default judgment against the assureds, to locate them through the Bakers' Union, of which they were members and through which organization, according to one witness, they might have been found.

It was further pointed out in the opinion in that case that the garnishee sought no continuance in the damage case, but at the very first setting of the trial arranged with counsel for plaintiff therein to permit the withdrawal of garnishee's counsel, and for the taking of a default judgment against the assureds. We have no such state of facts in the case at bar. A brief review of the facts in this case will show the difference between the two cases.

It appears from the evidence in this case that on June 8, 1932, appellant mailed a letter to Mr. Baird notifying him that the damage suit was set to be tried on June 13, 1932. In that letter Baird was requested to hold himself in readiness for the trial and to advise the driver of the bus also to be in readiness in case appellant should be obliged to try the case on the day named. The case was not tried in June, however, but was laid over and reset to be tried on November 28, 1932.

About two or three weeks before the November setting, one of appellant's attorneys called Mr. Baird on the telephone and notified him of the new date for the trial. An investigation by a representative of appellant made on November 23rd or 24th, 1932, disclosed information to the effect that Mr. Baird was out of the city.

The damage suit was not tried on November 28, 1932, but went over to the next day, on which day appellant requested the court to grant a continuance to enable appellant to make additional efforts to locate Mr. Baird, appellant having received information that he had disappeared from his home and usual place of business sometime prior to November 28, 1932. Upon appellant's request the court reset the case to be tried on December 12, 1932. On December 2, 1932, appellant mailed a letter to Mr. Baird, addressed to his place

of business, informing him that the case was set to be tried on December 12, 1932, and telling him it would be necessary for him to attend the trial as the named defendant in the damage suit. The letter requested Baird to give the matter his immediate attention, to acknowledge receipt of the letter, and to advise appellant whether or not he would be available for the trial and whether he would cooperate with appellant as provided in his policy. A letter similar to the one just mentioned was later sent to him at the same address by registered mail. No answer to either of these letters was received by appellant.

On December 7, 1932, appellant's investigator called at Mr. Baird's home, where he was informed that Mr. Baird had departed for parts unknown. Upon further investigation on the same day at Baird's garage, appellant's representative was informed by persons there that Baird "had pulled out about a week previous, had not been heard from since, that nobody knew of his whereabouts." It further appeared from the testimony of appellant's investigator that he had been told sometime prior to December 12, 1932, by Roy Chapel, Baird's employee who was the driver of the motorbus involved in the accident, that Baird "has skipped the country."

Appellant's investigator was permitted to testify, without objection, that sometime after respondent had obtained her judgment against Baird in the damage suit, but prior to the trial of the case at bar, he had a conversation with Baird's mother in which she said that Baird disappeared on November 21, 1932, during the night and that he had been heard from only once since that time; that the family had employed detectives to locate him, but they did not have any success.

In a recent case the Court of Errors and Appeals of New Jersey was called upon to decide whether or not the failure of an assured to attend court on the day of the trial of a suit brought against him by an injured person was such a breach of the cooperation clause of the policy as to relieve the insurer of its obligation to pay the amount named in the policy. The suit on the policy was tried before a circuit judge without a jury, and resulted in a verdict for the defendant insurer. The policy contained a clause that the assured should cooperate with the insurance company, and upon the company's request he was required to assist in effecting settlement, securing evidence and the attendance of witnesses. The policy also provided that if the judgment against the assured for such personal injuries was not satisfied in thirty days after it was rendered, the person recovering such judgment, or his legal representative, could proceed against the insurance company. The evidence showed that the assured had been notified of the time of the trial and was present in court on the first day thereof. After the selection of the jury and opening statements by counsel, the case was laid over until the following morning. The

assured told the insurance company's attorney, who was representing him in the damage case under the terms of the policy, that he would be present on the next day. He failed to appear and sent a telegram merely stating that he could not get to the place of trial that day. The Court of Errors and Appeals, adopting the opinion of the circuit judge rendered in the suit on the policy, held that the assured had failed to comply with the clause in his policy which required him to cooperate with his insurer, and that the right of recovery of the injured parties could rise no higher than the rights of the assured to recover against the insurance company had the assured brought the suit. The judgment in favor of the insurance company was affirmed. [Hutt v. The Travelers Ins. Co., 110 N. J. Law 57.]

In a garnishment proceeding recently decided by the Springfield Court of Appeals, the cooperation clause in the liability policy involved therein required the assured to forward immediately to the insurer any process served on him. The garnishment proceeding was based upon an execution issued on a default judgment for damages which had been obtained against the assured. There was a judgment in the trial court against the garnishee insurance companies.

The Court of Appeals, after a careful review of the evidence, held that even though the assured had given notice of the accident to the insurer, such notice was not sufficient compliance with the terms of the cooperation clause of the policy, which required the insured to forward immediately all process served upon him. The court said:

"Plaintiff's evidence substantiates garnishee's contention that defendant failed to cooperate as required by section E of the policy. It has been held in most cases to be a question of fact, and the trial court, sitting as a jury, has the right to decide that question, and its findings, if supported by any substantial evidence, would not be disturbed on appeal. [Finkle v. Western Automobile Ins. Co., supra.] But the only cooperation the insured did in this case was to notify garnishee of the accident. In every other respect she failed to abide by the terms of the policy. We think garnishee's contention is correct." [Nevil v. Wahl (Mo. App.), 65 S. W. (2d) 123, 129.]

We are of the opinion that the failure of Baird, the assured in the case at bar, to appear in court for the trial very materially prejudiced and handicapped appellant in its efforts to defend the damage suit brought against him, and constituted a clear breach of the condition of the policy which required him to cooperate with appellant in such defense, warranting appellant in withdrawing from the case.

The policy provided that Baird would "whenever requested . . . aid in . . . obtaining . . . the attendance of witnesses . . . and at all times render all possible cooperation and assistance" to appellant in connection with the defense of any claim asserted

against him. The evidence is conclusive that Baird did not "render all possible cooperation and assistance" to appellant in its efforts to defend the suit brought against him by respondent herein. No excuse or explanation whatsoever was offered by respondent to show why, on the two dates when the damage case was to be tried, Baird failed to appear.

The record discloses that such information concerning Baird as appellant was able to procure showed that Baird's disappearance and absence from the city and from his place of business was intentional, for it appears that sometime in October, 1932, Baird was put out of the garage which he had been operating because he had failed to pay the rent therefor. This, together with other evidence of a similar nature, could lead to but one conclusion, namely, that it was Baird's intention not to return to the city at that time, and there was nothing to indicate that his presence could be procured at any future time.

There was no evidence from which even an inference could arise to indicate lack of diligence, or bad faith on the part of appellant in its attempt to procure Baird's attendance in court so that it could perform its obligation to defend him in that suit. The evidence shows that appellant exercised great care and diligence and put forth every effort that could reasonably be expected of it to get Baird into court for the trial, but was unable to do so because of his unexcused absence from the city at a time when he knew that the case in which he was the defendant was coming on for trial.

Respondent argues, however, that there was no material lack of cooperation on the part of Baird in appellant's attempt to defend the damage suit brought against him for the reason that Baird was not on or near the bus at the time of the accident out of which the damage suit arose, and, therefore, was not and could not be a witness to any fact in that case; that the only fact to which he could have testified was ownership of the motorbus involved in the accident, and that such ownership had already been admitted by appellant's attorneys when the deposition of Roy Chapel, the chauffeur, was taken.

We are unable to agree with respondent's contention. The adoption of such a view would require us to completely disregard the contract which the parties themselves entered into and to make a new contract for them. This we are, of course, not authorized to do.

Neither respondent nor anyone else could reasonably say in advance of the trial that Baird's absence from the trial would be immaterial, nor can anyone now say his absence would have been immaterial. Many things occur during the course of the trial of a contested damage suit which no one can foresee prior thereto. Witnesses sometimes forget facts and sometimes fail to appear; sometimes they give testimony at variance with statements made prior to the trial. Any number of incidents might be mentioned to show the unquestion-

able importance to the appellant of having Baird himself in court for quick and ready conference to meet emergencies arising during the trial. Baird himself, although not regarded as a material witness before the trial, may during the trial have become a very important witness in rebuttal with respect to statements made to him by witnesses. Baird was the owner of the motorbus involved in the accident out of which the damage suit arose. He was the master of the servant Chapel who was operating the motorbus at the time of the accident. Baird personally was the defendant in that suit. His mere presence as defendant at the trial would have been sufficient to show that he had faith in the defense being made in his name and in his behalf, whereas his absence might, and probably would have, led the jury to infer his lack of faith in, or lack of sympathy with such defense.

To hold that Baird's unexcused absence from the trial of the damage suit was immaterial, would amount to a complete nullification of the language which the parties themselves used in describing their respective obligations. Appellant agreed to defend such a damage suit, while Baird agreed that he would "at all times render all possible cooperation and assistance" in such a defense. To cooperate means "to act or operate jointly with another or others"—Webster's International Dictionary. There are no restrictions in the contract as to the manner in which Baird agreed to give his cooperation to appellant in such defense. It is clear from the language used that both parties contemplated that Baird's presence would be necessary at any trial coming within the terms of the policy. Any other conclusion would lead to an absurd result, for it would mean that while appellant was bound to defend Baird in such a suit, Baird was not bound to do what he agreed to do, namely, to cooperate or "act with" appellant in such defense. A defense to a suit for damages for personal injuries includes something more than mere preparation for trial; it includes in addition thereto all actions taken and all matters presented by or on behalf of the defendant at the trial itself. Baird certainly could not "act with" appellant at the trial when he was absent therefrom.

There are additional facts in this case, which, while not determinative thereof, nevertheless serve to show beyond question that Baird's absence from the court when the damage suit was set for trial constituted a material lack of cooperation on his part in that suit. It is an uncontroverted fact that on March 25, 1932, appellant notified Baird by letter that the suit which had been brought against him by respondent was for $20,000 in excess of the amount covered by his policy. Baird was advised in that letter to refer the suit to his own personal attorney to protect his interests above the policy coverage of $5000. Furthermore, appellant's policy required it not only to pay any sum up to $5000 as damage for bodily injuries to one person, but also required it to defend any suit brought against

Baird regardless of the amount of damages claimed in such suit. Appellant, therefore, under the terms of the policy unquestionably had the right to have Baird personally present in court at the trial to confer with him concerning their respective rights and obligations as to the amount of damages claimed in excess of the $5000 named in the policy. If appellant had attempted to go on with the trial without Baird being present, it would have been in no position to speak or act for him with respect to any offer of settlement which might have been made to adjust the loss for an amount in excess of the amount covered by the policy. Appellant would thus have been in the position of being bound to defend the damage suit regardless of the amount involved therein, and yet, because of Baird's unexcused absence, it would have no authority from him and no opportunity to procure his authority to make settlement for any sum above the amount named in the policy.

The parties, by their contract, certainly did not intend to create any such anomalous situation for they provided therein that whenever requested by appellant Baird would ''aid in effecting a settlement.''

Apart, however, from questions of Baird's own direct liability for damages in the suit in excess of the amount of the policy coverage, the very nature of the obligations mutually entered into by appellant and Baird, as set forth in the policy, necessarily required Baird's presence at the trial. Appellant could, of course, have lost the benefit of that requirement by waiver, by collusion or fraud, or by failing to use proper diligence to procure Baird's presence at the trial, or by failing in some other manner to act in good faith in its attempt to perform its obligation to defend Baird in that suit.

Appellant's withdrawal from the defense of the damage suit shows conclusively that there was no waiver of the requirement as to Baird's presence in court for the trial of the damage suit, and a careful review of the record shows no evidence whatsoever of fraud, collusion, lack of diligence, or bad faith on the part of appellant in its efforts to perform its obligation in accordance with the terms of the policy. On the contrary, it clearly appears that appellant was prevented from performing its obligation to defend the damage suit by Baird's intentional and unexcused absence from court on the dates when the case was set for trial.

In view of the evidence in this case and the plain and unambiguous language of the cooperation clause of the policy, we believe it is not within the power of anyone standing in Baird's shoes, nor is it within the power of the court to say that Baird's absence from the court at the trial was immaterial. We are of the opinion that the trial court erred in rendering judgment for respondent on this record. The judgment is, therefore, reversed. *Hostetter, P. J.,* and *Becker, J.,* concur.