**Ethel A. HENDRIX and Clell J. Hendrix, Plaintiffs-Appellants,**

**v.**

**Ralph Harry JONES, Defendant,**

**and**

**Farmers Insurance Company, Garnishee-Respondent.**

**No. 60773.**

Supreme Court of Missouri, En Banc.

May 17, 1979.

H. George Lafferty, Jr., Lafferty, Horowitz & Shurin, a Professional Corp., Kansas City, for plaintiffs-appellants.

Richard H. Heilbron, Heilbron & Powell, Kansas City, for garnishee-respondent.

RENDLEN, Judge.

This is an appeal from a garnishment proceeding in which plaintiffs sought to recover amounts due on their $50,700 judgment for personal injuries and loss of consortium resulting from an automobile collision with Ralph Jones. In the garnishment action against Farmers Insurance Company (Farmers), Jones' liability carrier, the trial court found for garnishee and following reversal on appeal the cause was transferred from the Western District of the Court of Appeals that we might reexamine the existing law. The question: Does the unexcused absence of defendant-insured from the trial of plaintiffs' claims against him constitute a breach of the cooperation clause of his automobile liability insurance policy so as to relieve the insurer from its obligation thereunder, absent a showing of prejudice?

On August 28, 1973, Ethel Hendrix, driving her automobile southbound on U.S. Highway 71 in Bates County, Missouri, was struck from the rear by the car of Ralph Harry Jones, who was speeding and intoxicated at the time. The Hendrixes filed suit against Jones in October, 1973, and when the case came for trial on Monday, April 28, 1975, defense counsel retained by the insurer requested a continuance on defendant's failure to appear. In support of that request counsel recited the following conduct of defendant in breach of the insurance contract's cooperation clause: Defendant had been sent a letter in early April, 1975, stating it is "essential that you be present during the entire course of the trial." On Friday, April 25, 1975, counsel twice called the insured by telephone to notify him of the date, time, and place of trial and to request his attendance. In the first conversation, defendant stated that he did not know whether he could come to trial because his wife was in the hospital suffering from cancer. A second call was made and the woman who answered responded affirmatively when addressed as Mrs. Jones; but when defendant came on the phone, he claimed she was his sister. Further, he made no claim of his inability to attend trial but stated that even if he came to trial he would not testify. In this conversation counsel warned that failure to cooperate could result in forfeiture of coverage and finally suggested that defendant consult a local attorney and see what his rights were. In defendant's deposition taken subsequent to the trial he acknowledged having been informed at some time that if he failed to appear at trial he was "apt" to lose his coverage under the policy. In the colloquy following this recital, defense counsel stated that he intended to admit liability, defending only on damages and conceded that defendant's presence could not assist the defense on liability or intoxication. This admission came in contemplation of the state trooper's prospective testimony (as outlined by plaintiffs' counsel) that defendant had been speeding over one hundred miles an hour and that his blood alcohol content measured .33 when arrested, which coupled with his inability to function indicated he was "absolutely as intoxicated as this state trooper has ever seen a man to be." Nevertheless defense counsel maintained that defendant's presence was required to enable counsel to afford a defense, to consult on trial developments and to show the jury that defendant was personally committed to a favorable outcome of the trial.[1]

---

1. Counsel also pointed to defendant's possible liability beyond the policy limits and worried that defendant's rights could be prejudiced in his absence. Plaintiff promptly amended the petition to ask relief within the policy limits.

On the court's denial of the request for continuance, defense counsel, while maintaining that defendant had breached the cooperation clause in the insurance agreement, stated, "[I]t is not my intention to withdraw at this stage, and deny coverage to him, but rather to stay in the case and defend it." He asserted this "should not be construed as any admission on my part that the policy has not been breached," but was solely to avoid a default judgment. Prior to trial, insurer had offered plaintiffs the sum of $10,000 in settlement of their claims against defendant; after two days of trial, insurer, by and through its attorney, offered plaintiffs $17,500 in settlement. Plaintiffs' counsel during closing argument four times stressed the fact that defendant was absent and "obviously" had no concern for the outcome of the trial, that it was "no problem to him."

The jury awarded damages of $47,500 to Ethel for her injuries and $3,200 to Clell Hendrix for loss of consortium. Following this unfavorable result, counsel for the insurer sent a letter to the insured on May 2, 1975, stating in part: "Your failure to appear constituted a breach of the cooperation clause to your policy and it is the position of the Farmers Insurance Company, Inc., that your insurance policy, therefore, affords you no coverage for the judgment recited above." The letter also stated that a motion for new trial would be filed on defendant's behalf. The motion for new trial, charging passion and prejudice on the part of the jury and error in the court's refusal of the requested continuance, was overruled on June 16, 1975, and no appeal was taken from that ruling.

Plaintiffs brought this suit and on August 4, 1975, filed their interrogatories to garnishee, Farmers Insurance Company, which by its answers denied any debt or obligation to indemnify defendant or satisfy any liability arising from the accident. At the garnishment hearing in October of that year, the policy defense of noncooperation was asserted by garnishee. The trial court entered its judgment finding that defendant Jones breached his contract of insurance by his unexcused absence from trial, that garnishee neither waived its right to rely on such breach nor became estopped to assert the same, and that garnishee was relieved of liability for the casualty of August 28, 1973.

■ There is no question that defendant's insurance policy contained a typical cooperation clause [2] requiring him to attend the trial when, as here, he was requested so to do, and that defendant failed to appear. Further it is clear that such policy provisions are valid and enforceable in Missouri. *Quisenberry v. Kartsonis*, 297 S.W.2d 450 (Mo.1956); *Taff v. Hardwick*, 419 S.W.2d 482 (Mo.App.1967); *Lenhart v. Rich*, 384 S.W.2d 812 (Mo.App.1964). After a material breach has been proved, unless the insurer has waived its right to assert the defense of material breach or is estopped from asserting it, the insurer may deny liability coverage to the insured under the terms of the policy. This case does not deal with questions of the insurer's reasonable diligence in attempting to contact its insured or with the absence of an insured from trial with valid excuse. The record reflects Farmers exercised such diligence in notifying its insured of the trial and the insured's absence went unexcused. Accordingly we examine only whether the insurer need prove prejudice to establish a material breach of the cooperation clause sufficient to release the company from liability under the policy.

---

2. The cooperation clause of the liability policy stated as follows: "The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such emergency medical and surgical relief to others as shall be imperative at the time of occurrence."

In 1934, the Missouri Court of Appeals adopted what has been characterized as a *per se* rule of material breach for the insured's unexcused absence from trial in *Bauman v. Western & Southern Indemnity Co.*, 230 Mo.App. 835, 77 S.W.2d 496 (1934). There the insured was owner of a bus being driven (with permission) by his employee at the time of the accident. The insured was not present at the accident scene and, as the Court of Appeals stated, his first-hand knowledge of the case went only to the question of the vehicle's ownership which stood admitted by defense counsel. The St. Louis Court of Appeals nevertheless held that the insured's unexcused failure to attend trial constituted a material breach of the cooperation clause. The court noted that in a garnishment action the injured party has only the rights of the insured and "the insurance company may assert any defense against the injured person which it might have asserted as a defense in an action brought against it by its assured." 77 S.W.2d at 498. In other words, the injured party is subrogated to the rights of the insured. On this point there continues to be agreement in Missouri and other jurisdictions. *See, e. g., Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo.1964). The *Bauman* court, however, in rejecting plaintiff's argument that because the insured could not contribute testimony which would add to the defense there was no material breach of the policy, stated: "Any number of incidents might be mentioned to show the unquestionable importance to the appellant of having Baird [the owner-insured] himself in court for quick and ready conference to meet emergencies arising during the trial. . . . His mere presence as defendant at the trial would have been sufficient to show that he had faith in the defense being made in his name and in his behalf, whereas his absence might, and probably would have, led the jury to infer his lack of faith in, or lack of sympathy with such defense." 77 S.W.2d at 502. Noting the language of the cooperation clause, the court then concluded that "it is not within the power . . of the court, to say that Baird's [the insured's] absence from the court at the trial

was immaterial." 77 S.W.2d at 503. This was tantamount to the adoption of a *per se* rule that the insured's unexcused failure to attend trial in and of itself constitutes a material breach of the cooperation clause.

In a later case under similar facts the Court of Appeals in *Fischer v. Western & Southern Indemnity Co.*, 106 S.W.2d 490 (Mo.App.1937), followed the *Bauman* reasoning and permitted the insurer a complete defense in the ensuing garnishment proceeding. Others have also approved the *per se* rule under facts where the insured arguably could have added material evidence at trial. *See Taff v. Hardwick*, 419 S.W.2d 482, 485 (Mo.App.1967); *Lenhart v. Rich*, 384 S.W.2d 812 (Mo.App.1964). For the reasons hereinafter discussed, to the extent that *Bauman* and other cases like it so hold, they should no longer be followed.

"In determining whether the failure of an insured to attend the trial or to testify was prejudicial to the insurer, * * * the courts have generally considered the importance of the insured's testimony to the defense." Annot., 60 A.L.R.2d 1157 (1958). *Bauman* is factually similar to the case at bar in that the only matters to which the insured Jones could have testified—his liability and intoxication at the accident scene—were admitted by stipulation; thus, in each case the insured's absence did not deprive the insurer of testimony necessary for the defense.

The time has come to reject the legal presumption raised in *Bauman* and subsequent cases. Admittedly, the conspicuous and unexplained absence of the defendant at trial *might* prejudice a jury and that prejudice might be aggravated by opposing counsel's argument to the jury. But presuming such prejudice as a matter of law rests on speculation and conjecture. One might with equal justification, as did plaintiffs' counsel at bar in the pretrial bench conference, claim that the defendant's presence at trial could prove far more devastating to the defense than his absence. Defendant could have been called to the stand to testify to his high rate of speed at the time of the accident (or his lack of memory

thereof), as that factor bore on the damage issue. Additional testimony might have been adduced concerning defendant's intoxicated condition in order to apprise the jury of all circumstances surrounding defendant's excessive speed. In short, as the *Bauman* opinion itself noted, "Many things occur during the course of the trial of a contested damage suit which no one can foresee prior thereto." 77 S.W.2d at 501–02.

We can no longer justly adhere to the *per se* rule of *Bauman* which necessarily rests on speculation rather than facts. Nor does it seem proper to adopt a principle embodying a rebuttable presumption of prejudice from the insured's unexcused failure to attend the trial. The trend is otherwise. Many jurisdictions have abandoned such a rebuttable presumption, *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963); *MFA Mut. Ins. Co. v. Cheek*, 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809 (1977); *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977); *Oregon Automobile Ins. Co. v. Salzberg*, 85 Wash.2d 372, 535 P.2d 816 (1975), while others, without the necessity of abandoning or overruling prior case law, have imposed the burden of proving prejudice on the insurer. *Lindus v. Northern Ins. Co. of New York*, 103 Ariz. 160, 438 P.2d 311 (1968); *Farley v. Farmers Ins. Exch.*, 91 Idaho 37, 415 P.2d 680 (1966); *Rampy v. State Farm Mut. Automobile Ins. Co.*, 278 So.2d 428 (Miss.1973); *MFA Mut. Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966); *Johnson v. Doughty*, 236 Or. 78, 385 P.2d 760 (1963).

In *Campbell*, the California Supreme Court reasoned from the premise that "presumptions should not be created judicially unless there are compelling reasons for doing so," 60 Cal.2d at 307, 32 Cal.Rptr. at

829, and concluded that a presumption in favor of the insurer on the issue of prejudice would "not be in keeping with the public policy . . . to provide compensation for those negligently injured in automobile accidents through no fault of their own." *Id.* In response to the contention that an insurer will have difficulty proving prejudice, the court stated, "Although it may be difficult for the insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative." *Id.*

■■■ We find the California court's analysis persuasive. A presumption favoring the insurer on this question could unfairly deprive innocent injured persons of the benefit of a valid judgment and provide the insurer an undeserved windfall. In this case, the Hendrixes as third parties had no connection with Jones until the accident he caused. Although it was not Farmers' fault that its insured failed to attend trial, neither was it the fault of the plaintiffs who had absolutely no connection with nor control over his conduct. Because Jones apparently cannot satisfy the judgment, either Farmers or the Hendrixes must bear the loss. In such circumstances, no presumption should be afforded either party.[3]

■■■ The particular facts of this case make a remand to the trial court on the issue of prejudice unnecessary. Respondent has argued two grounds of prejudice. First, it claims the absence of its insured from trial affected the jury's verdict. We have previously considered that argument and as pointed out above it represents mere speculation which under the peculiar facts of this case cannot be proved by respon-

**3.** Although policy considerations dictate that the insurer be required to establish substantial prejudice without benefit of presumption, we do not imply that the innocent injured party is a third party beneficiary who would be entitled to bring a direct action against the insurer in the initial suit to determine negligence of the insured. A few jurisdictions, either through statutory interpretation or case law, have granted the innocent third party a right of direct action against the insurer. *West v. Monroe Bakery*, 217 La. 189, 46 So.2d 122 (1950); *Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969). We reject this position, and hold only that in showing a material breach the insurer will also be required to prove substantial prejudice to avoid liability under the policy.

dent.[4] Second, respondent claims prejudice in matters of trial strategy from not having defendant available for consultation. The only particular strategic decisions to which respondent points are the admissions of liability and intoxication made before trial. In view of that position it cannot be said that respondent could prove prejudice from not having the chance to inquire of defendant whether to make the admissions.

Because of our resolution of the main issue of this case we need not consider plaintiffs' contentions as to waiver and estoppel. The judgment of the circuit court of Jackson County is reversed and the cause remanded with instructions to enter judgment for plaintiffs-garnishers.

MORGAN, C. J., BARDGETT and SIMEONE, JJ., and STOCKARD, Special Judge, concur.

FINCH, Senior Judge, dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of FINCH, Senior Judge.

DONNELLY, J., not sitting.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.

FINCH, Senior Judge, dissenting.

I respectfully dissent.

The principal opinion recognizes that the automobile insurance policy issued by Farmers Insurance Company to defendant Jones contained a typical cooperation clause which required, among other things, that Jones should cooperate with Farmers and at its request attend hearings and trials in connection with claims as to which there was coverage. The opinion concedes that Farmers exercised diligence in notifying Jones of the trial setting and in requesting him to be present for the trial; also that the failure of Jones to attend was unexcused and constituted a material breach of the cooperation clause of the policy. It next recognizes that under Missouri cases which it cites "it is clear that such a policy provisions are valid and enforceable in Missouri" and that after a material breach by the insured the insurer may deny liability coverage to insured unless it has waived that right or for some reason is estopped from asserting denial of coverage.

Having so stated, the principal opinion then proceeds to reverse the judgment of the trial court and to direct entry of judgment against Farmers as garnishee. It does so on the basis that under the facts of this case there was no prejudice to Farmers as a result of Jones' failure to attend the trial. It holds that even though a material breach of the cooperation clause occurs, the insurer is not relieved from liability in a garnishment proceeding unless the insurer affirmatively establishes prejudice.[1]

I cannot join in the decision made by the principal opinion. In the first place, I do not agree that insurer must affirmatively show that prejudice to it resulted from a material breach of the cooperation clause by the insured.

Certainly it would not be obligated to so show if Jones as the insured were seeking to enforce coverage after he had committed what is conceded to have been a material breach of the policy. This is basic contract law. When one party to a contract materially breaches it the other may sue for the breach or may be excused from performance. Consistent with the rule, under various Missouri cases including *Bauman v. Western & Southern Indemnity Co.*, 230 Mo.App. 835, 77 S.W.2d 496 (1934) and *Taff v. Hardwick*, 419 S.W.2d 482 (Mo.App.1964), the breach by Jones in failing to attend the trial excused Farmers from its obligation

---

4. Respondent concedes it would be improper to seek evidence from the trial jurors on whether they took defendant's absence into consideration in their deliberations.

1. Plaintiffs also asserted waiver and estoppel as grounds for reversal but, in view of the conclusion reached, the principal opinion does not reach the issues of waiver or estoppel and does not base its conclusions thereon. Hence I do not consider those issues in this dissent.

under the policy to provide coverage to Jones. If that premise is accepted, as I submit it must be, it follows that Farmers would not be obligated to provide such coverage for the benefit of plaintiffs because they stand in the shoes of the insured when it comes to collecting a judgment against his insurer. *Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo.1964).

The principal opinion says that plaintiffs had no responsibility for the failure of Jones to attend the trial and that innocent persons are deprived of the benefit of a valid judgment if the insurer is excused by reason of Jones' breach of the contract with Farmers. This discussion overlooks the nature of the relationship between the parties. It does not state a valid basis for reaching a different result than we would if Jones were seeking to enforce coverage. We do not have compulsory insurance in Missouri. Hence, there is no statute to create rights in judgment holders such as plaintiffs. Plaintiffs are not parties to the contract of insurance between Jones and Farmers and are not third party beneficiaries of such contract. Under *Meyers v. Smith,* supra, as the principal opinion recognizes, plaintiffs stand in the shoes of Jones as the insured and are subrogated to his rights. If Farmers is excused from liability to Jones for coverage as a result of his material breach of the contract, then plaintiffs have no greater rights and Farmers is not liable to them as garnishee. This necessarily means that Farmers does not have to establish that prejudice resulted before it can rely upon the material breach of the policy provisions by Jones.

Secondly, even if a rule requiring proof of prejudice by the insurer is established, the record in this case does not justify the conclusion in the principal opinion that Farmers was not prejudiced by the failure of Jones to attend trial. Instead, it shows that Farmers was prejudiced. When this case was called for trial, the attorney hired by Farmers to defend the case against Jones asked the court to continue the case because of the failure of Jones to attend. In arguing for a continuance, counsel stated:

"In the first place, it has been my experience that if the jury sees that the defendant isn't interested enough in his own lawsuit to even come to the court and hear the case that they are not going to pay much attention to the defendants side of the case, and they are not going to have any feeling that he is entitled even to a fair trial when he doesn't appear."

That request was denied and the trial was held. As a result the attorney tried the case with a vacant chair behind him instead of a live defendant. When this case was argued to the jury the attorney for plaintiffs took advantage of Jones' absence by saying to the jury:

"This is a case where the defendant, Mr. Jones, of Sedalia, *who wasn't even interested enough to show up* for the case, ran into the rear end of the plaintiff * * * (emphasis supplied).

Later, plaintiff's counsel argued:

"Now, this business about, 'You can't believe all the rest of her testimony because of Mrs. Hilburn', that's another smoke signal, that's another attempt to get around the fact that his driver, *who didn't even have the decency to show up in this case * * **"* (emphasis supplied).

Still later, plaintiff's counsel argued:

"The judgment, if any, is not directed toward Mr. Heilbron, its directed toward Mr. Jones, of Sedalia, *who really isn't concerned about this case.* It's obvious, so don't worry about that." (emphasis supplied).

Finally, counsel argued:

"I want you to use your common sense, and I want you to realize *Mr. Jones is not here and doesn't care about this. He is not concerned about it. It's no problem to him.*" (emphasis supplied).

Obviously, counsel for plaintiffs considered that the absence of Jones and his apparent insensitivity and lack of concern—his lack of "decency" as counsel characterized it—was significant and something that would make an impression on the jury and affect their verdict. Otherwise, he would

not have kept repeating this theme. To say that such argument, made possible only by the failure of Jones to attend the trial, was not prejudicial in the defense of the case is not realistic, in my judgment. I believe that anyone who has tried jury cases knows the impact of use and repetition of a theme such as that employed by counsel in this case. It is devastating. Without question, it was prejudicial. It was injected by the very parties who now seek to enforce against Farmers the judgment entered following such telling argument. If Jones had been present, the attorney for plaintiffs could not have argued that defendant wasn't interested or concerned, or that he didn't even have the decency to show up at the trial.

In addition, the absence of defendant Jones deprived counsel of the opportunity to confer with him in the process of selecting jurors as well as questions of trial strategy during the trial. The fact that Jones likely would not have testified and that if he had testified, his testimony might have been detrimental, as the principal opinion concludes, does not in any way eliminate the prejudice in other respects resulting from defendant's absence.

For all of these reasons, I dissent.