# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1508
_____

Cardinal Building Materials, Inc.

*Plaintiff - Appellant*

v.

Amerisure Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2024
Filed: March 29, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In this insurance-coverage dispute, the district court granted summary judgment in favor of Amerisure Insurance Company after holding that Cardinal

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

Building Materials, Inc. failed to cooperate with Amerisure's investigation of its claim. We vacate the judgment.

## I.

In Spring 2013, Cardinal's facility in Bridgeton, Missouri, was damaged by a tornado. Cardinal filed a claim with its insurer, Amerisure. Cardinal's insurance policy describes the acts that "must be done in case of loss," including: sitting for an examination under oath; producing records requested by Amerisure; and providing to Amerisure a "signed, sworn proof of loss" within sixty days of Amerisure's request. Importantly, the policy states that Cardinal "must cooperate with [Amerisure] in performing all acts required by the [policy]."

Amerisure paid Cardinal $1,549,592.30 on its claim and closed the file. A year later, Cardinal told Amerisure that it believed it was entitled to additional coverage under the policy and provided a spreadsheet listing various losses. Cardinal initially did not provide documentary support for the losses listed on the spreadsheet. About six months after receiving the renewed claim, Amerisure responded by asking for documents to support the claimed additional losses. About six months after that, Cardinal responded with five hundred pages of poorly organized documents. Some of the documents that Cardinal produced had no apparent relevance to its renewed claim. Amerisure also requested that Cardinal provide a corporate representative to sit for an examination under oath. Cardinal complied.

During the claim-adjustment process, Cardinal repeatedly revised the amount and types of losses it was claiming. Throughout that time, Amerisure sent letters to Cardinal with requests for information. Cardinal sometimes took several months to respond but appears eventually to have produced all the requested records within its control. In the last letter that Amerisure sent to Cardinal before Cardinal sued, Amerisure told Cardinal that a decision on its renewed claim was near:

Please be advised that Amerisure Insurance will need additional time to complete its claim investigation. Specifically, Amerisure Insurance is still analyzing the produced documents in order to determine if anything additional is owed or if the actual cash value/replacement cost exceeds the repair cost, as well as what portions of the claims are possibly relating to the redesign/upgrade of the structure.

Additionally, we still have not heard anything further regarding the complete files of Mackenzie Renovations and Coffey Design, though we have sent these businesses new letters. If the delay is due to the current COVID-19 situation, it may take longer to receive an answer. If you receive anything from these businesses, please forward it to our office immediately so that Amerisure can begin reviewing these documents.

Until Amerisure can review the complete files, it is not able to issue any immediate payments as it is unclear if anything additional is owed. . . . However, we hope to have finished the analysis of the produced documents, other than those requested from Coffey Design and Mackenzie Renovations, within forty-five (45) days. As soon as we have an update, we will let you know.

Shortly after Amerisure sent that letter, Cardinal filed a three-count federal lawsuit against Amerisure with claims for breach of contract, vexatious refusal to pay, and unjust enrichment. The district court dismissed the unjust-enrichment count for failure to state a claim and later granted summary judgment to Amerisure on the breach-of-contract and vexatious-refusal-to-pay claims, holding that Cardinal materially breached the insurance policy's cooperation clause. Cardinal appeals.

## II.

We review the grant of summary judgment *de novo*. *See McClune v. Farmers Ins.*, 12 F.4th 845, 849 (8th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this insurance-coverage dispute, Missouri law governs. *See McClune*, 12 F.4th at 849.

A.

Cooperation clauses are valid and enforceable in Missouri. *See id.* (citing *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. 1979)). Under Missouri law, to deny coverage for an insured's failure to cooperate, "an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." *Id.* "Missouri courts are clear that where reasonable persons could disagree whether the insured materially breached its insurance policy and the insurer suffered substantial prejudice as a result, the issues are questions of fact for the fact-finder to resolve." *Northrop Grumman Guidance & Elecs. Co. v. Emp'rs Ins. Co. of Wausau*, 612 S.W.3d 1, 27 (Mo. Ct. App. 2020); *see also Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 272 (Mo. 2013).

Amerisure claims that Cardinal failed to "cooperate with [Amerisure] in performing" two acts "required by the [policy]," entitling it to summary judgment. First, the policy required Cardinal to "produce records . . . as often as [Amerisure] reasonably request[s]." Amerisure argues that there is no genuine dispute that Cardinal breached this provision by producing five hundred pages of unorganized documents supporting its renewed claim of loss and by delaying too long in responding to Amerisure's requests for documents.

Yet the record reflects that Cardinal eventually provided Amerisure with all relevant documents in its possession. Though Amerisure complains that Cardinal's document production was too disorganized and took too long, the policy does not require production of documents in any particular form or on any specific timetable. Given that Cardinal produced all relevant records in its possession, a jury could find

-4-

that Cardinal's plodding pace and lack of organization are insufficient to prove a failure to cooperate with the policy's requirement that Cardinal "produce records . . . as often as [Amerisure] reasonably request[s]." We cannot say as a matter of law that these actions "materially breached" the cooperation clause. *See Northrop Grumman*, 612 S.W.3d at 27; *see also Guengerich v. Barker*, 423 S.W.3d 331, 339 (Mo. Ct. App. 2014) ("The materiality of a breach is a question of fact."); *Anderson*, 477 U.S. at 248.

Second, the policy requires Cardinal to "send [Amerisure], within 60 days after [Amerisure's] request, a signed, sworn proof of loss." The proof of loss must include "[d]etailed estimates for repair or replacement of covered property" as well as an "inventory of damaged and undamaged covered property showing in detail the quantity, description, cost, actual cash value, and amount of the loss." In addition, Cardinal "must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory." Amerisure argues that there is no genuine dispute that Cardinal breached this provision by repeatedly changing the amount that it claimed it was owed.

If Amerisure "request[ed]" a "signed, sworn proof of loss," then Cardinal would have been required to produce one that complied with the above requirements within sixty days. Yet Amerisure does not point to evidence that it ever requested such a proof of loss. Absent a request by Amerisure, it does not appear that the policy's proof-of-loss provision required Cardinal to take any action. Thus, a jury could also find that Cardinal did not fail to cooperate with the policy's requirement that Cardinal "send . . . a signed, sworn proof of loss." We likewise cannot hold as a matter of law that these circumstances constitute a material breach of the cooperation clause. *See Northrop Grumman*, 612 S.W.3d at 27; *see also Guengerich*, 423 S.W.3d at 339; *Anderson*, 477 U.S. at 248.

Amerisure's arguments appear to presuppose the existence of a "general cooperation clause." *Cf. Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010) (explaining that "general cooperation clauses," like those requiring the

-5-

insured to "fully cooperate with the Company in any claim hereunder," may require the insured to perform acts not explicitly provided for in the insurance policy). Such a clause does not appear in the insurance policy before us.

Indeed, the cases in which we have affirmed summary judgment in favor of an insurer for failure to cooperate generally involve insureds' indisputable failures to comply with explicit policy terms. We have affirmed a district court's grant of summary judgment to an insurer because an insured refused to submit to an examination under oath despite the insurance policy requiring her to do so. *See McClune*, 12 F.4th at 849-50. On another occasion, we affirmed a grant of summary judgment because an insured failed to complete a notarized proof-of-loss form as required by the insurance policy. *See Concord Baptist Church of Jefferson City, Inc. v. Church Mut. Ins.*, 73 F.4th 602, 606 (8th Cir. 2023). Unlike these cases, Amerisure cannot identify a policy term with which Cardinal indisputably failed to comply.

For these reasons, genuine disputes of material fact exist as to whether Cardinal's actions constituted a material breach of the insurance policy's cooperation clause. Thus, summary judgment on this ground was improper. Given this conclusion, we need not address the parties' arguments addressing the substantial-prejudice prong of the affirmative defense.

B.

Amerisure urges us to affirm the district court's judgment on the alternative grounds that Cardinal failed to generate a genuine dispute of material fact that it suffered damages exceeding the amount Amerisure already paid and that Cardinal did not proffer evidence from which a jury could rationally estimate Cardinal's damages. The district court did not decide these questions because it believed that the failure-to-cooperate issue was dispositive. We think Amerisure's fact-intensive alternative arguments for affirmance are "best left to the district court" to decide in

the first instance. *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014).

## III.

For the foregoing reasons, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

_____