Verneda M. RIFFE, Plaintiff-Appellant,

v.

Robert D. PEELER, Defendant-Respondent,

and

Allstate Insurance Company, Garnishee-Respondent.

No. WD 34846.

Missouri Court of Appeals, Western District.

Dec. 11, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 29, 1985.

Application to Transfer Denied Feb. 26, 1985.

George E. Kapke, Cochran, Kramer, Kapke & Willerth, Independence, for plaintiff-appellant.

George Spencer Miller, Miller & Dougherty, Kansas City, for garnishee-respondent.

Before DIXON, P.J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an appeal from a garnishment proceeding.

Verneda M. Riffe obtained a $35,000.00 judgment against Robert D. Peeler for personal injuries arising out of an automobile collision. Allstate Insurance Company, Peeler's liability carrier, was summoned as a garnishee in aid of execution of the judgment rendered against Peeler. Following an evidentiary hearing in the garnishment proceeding, the trial court entered judgment in favor of Allstate, garnishee, and against Riffe, garnishor, from which judgment Riffe appealed.

The following compilation of facts drawn from a rather convoluted record serve to put this appeal in general perspective. Additional facts will be interpolated, where appropriate, during the course of addressing particular issues. On November 25, 1975, the front end of an automobile in which Riffe was a passenger collided with the rear end of an automobile operated by Peeler. According to Riffe, Peeler, after entering an intersection, "threw his car into reverse and backed into" the automobile in which she was riding. Conversely, according to a police report, Peeler told the investigating officer that his car "stalled" in the outside lane and while he was attempting to start it, he was rear ended by the automobile in which Riffe was riding.

Riffe filed an action for personal injuries against Peeler. An answer denying both liability and damages was filed on Peeler's behalf by counsel retained by Allstate. Interrogatories were served by Riffe in the underlying personal injury action on Peeler by mailing same to Peeler's attorney of record. Peeler's attorney was unable to locate the whereabouts of Peeler to answer the interrogatories, and an extension of time for answering same was obtained. Peeler's attorney, after considerable effort, obtained a telephone number and mailing address where Peeler could be contacted. A number of letters were mailed to Peeler by his attorney of record emphasizing the necessity and importance of his cooperation in defense of the personal injury action, as well as the consequences of noncooperation. Additionally, a number of appointments were scheduled by telephone for Peeler to meet with his attorney for the purpose of answering the interrogatories, all of which Peeler failed to keep. During the interim, Peeler's attorney advised him that the underlying personal injury action had been set for trial, and that it was "important" that Peeler be present at the trial and that he should "immediately" contact the attorney.

Peeler ignored counsel's repeated efforts by mail and telephone to obtain his cooperation in answering the interrogatories and defending the personal injury action. After the extension of time expired for answering the interrogatories, Riffe filed a motion to strike Peeler's answer in the personal injury action as a sanction for Peeler's failure to answer the interrogatories. Counsel for Peeler immediately advised Peeler thereof by certified mail, accompanied by instructions that it was "imperative" that Peeler "immediately" contact him and in the event Riffe's motion to strike was sustained, Allstate would deny coverage. No response was forthcoming from Peeler. The trial court, notwithstanding written objections by counsel based on Peeler's lack of cooperation, sustained Riffe's motion—Peeler's answer was stricken, an interlocutory judgment was entered in favor of Riffe and against Peeler on the issue of liability, and a trial date was set on the issue of damages. Peeler was advised of the aforementioned turn of events by certified mail, along with instructions from counsel that it was "absolutely necessary" that Peeler contact him "immediately" and that Peeler appear in court on the date the issue of damages was set for hearing as it might be "possible" at that time, if he appeared, to reinstate his "answer and avoid a judgment against him"; Peeler was further advised that if he failed to appear in court at the scheduled time, counsel would withdraw as his attorney of record and Allstate would deny coverage under its policy of insurance. Peeler failed to respond, and neither contacted counsel nor appeared in court for the scheduled hearing on the issue of damages. On the morning of the hearing just mentioned, the trial court permitted counsel to withdraw as attorney of record for Peeler. An evidentiary hearing on the issue of damages immediately followed, resulting in a judgment in favor of Riffe and against Peeler in the sum and amount of $35,000.00. Thereupon, counsel for Peeler, by certified mail, advised Peeler that a judgment had been rendered against him in the amount of $35,000.00 for which he was personally liable as coverage under the automobile liability policy was denied by Allstate, and that Peeler should consult an attorney.

The long and short of the matter may be summed up as follows—Peeler utterly failed to cooperate in the defense of the underlying personal injury action from beginning to end. Suffice it to say, the automobile liability insurance policy issued by Allstate contained what may be characterized as a standard cooperation clause. At the garnishment hearing, the policy defense of noncooperation was asserted by Allstate as garnishee. The trial court found that Peeler had materially breached the cooperation clause, that Allstate was substantially prejudiced thereby, and that Allstate properly denied coverage.

Riffe raises two points on appeal: (1) the trial court erred in finding that Peeler's failure to assist in the preparation of answers to Riffe's interrogatories constituted a material breach of the cooperation clause since (a) Peeler was unaware of any facts which would constitute a valid defense to Riffe's cause of action arising out of the collision, and (b) Peeler's lack of cooperation did not materially prejudice Allstate's ability to defend against Riffe's cause of action; and (2) the trial court erred in finding that Peeler's failure to cooperate "authorized" Allstate to deny coverage since (a) Allstate failed to deny coverage when Peeler's failure to cooperate first became known to Allstate, and (b) "permitting withdrawal of insurance coverage after trial on damages is contrary to the intent of § 379.203, RSMo 1978, regulating issuance of insurance for uninsured motorist claims".

■ Before seriately addressing the points raised by Riffe on appeal, certain obtaining principles of law are recalled. Cooperation clauses such as the one in question are valid and enforceable in Missouri. *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. banc 1979); and *Quisenberry v. Kartsonis*, 297 S.W.2d 450, 453 (Mo.1956). *Hendrix* is particularly significant in that it rejected the long-standing "per se rule" in this state that an "insured's unexcused failure to attend trial in and of itself constitutes a material breach of the cooperation clause", and held that an insurer must prove "substantial prejudice" before it can deny coverage because of breach of a "cooperation clause". *Hendrix v. Jones, supra*, 580 S.W.2d at 743–44. Concomitantly, "reasonable diligence" must be exercised by an insurer to secure the insured's cooperation. *Colson v. Lloyd's of London*, 435 S.W.2d 42, 45 (Mo.App.1968). Finally, appellate review of the judgment rendered by the trial court in the garnishment proceedings is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

■ Due to the bifurcated nature of Riffe's first point, each part will be separately addressed. Riffe asserts that the trial court erred in finding that Peeler's failure to cooperate in answering her interrogatories constituted a material breach of the cooperation clause because Peeler was unaware of any facts which would constitute a valid defense to her cause of action. The record discloses facts raising a viable issue of liability—that Peeler's automobile was stopped when it was rear ended by the automobile in which Riffe was riding as opposed to Riffe's version that Peeler threw his automobile into reverse and backed into the automobile in which Riffe was riding. The record refutes Riffe's contention that Peeler was unaware of any facts which would constitute a valid defense to her claim.

■ The other portion of Peeler's bifurcated point, that Peeler's lack of cooperation did not "materially" prejudice Allstate, is untenable. Peeler's utter failure to cooperate with counsel in answering the interrogatories submitted by Riffe, notwithstanding repeated efforts and scheduled appointments to do so, resulted in Peeler's answer being stricken and entry of an interlocutory judgment on the issue of liability in a case of contested liability. Moreover, Peeler's continued course of noncoop-

eration, i.e., failure to contact counsel or appear at scheduled hearings, compounded counsel's difficulty in effectively defending the case on Peeler's behalf. It strains credulity to the breaking point to say that Peeler's total and complete failure to make himself available to answer interrogatories submitted by Riffe did not "substantially prejudice" Allstate. The result of Peeler's lack of cooperation—entry of an interlocutory judgment on the issue of liability in favor of Riffe and against Peeler in a case of contested liability—inexorably speaks of "substantial prejudice" suffered by Allstate. The record supports that Peeler's lack of cooperation constituted a material breach of the cooperation clause and that Allstate was "substantially prejudiced" thereby.

■ In the argument portion of her brief under point one, Riffe interjects that Allstate was "estopped" to deny coverage because it "failed to withdraw when the issue of noncooperation *first arose.*" (emphasis added) This contention flies in the face of the duty imposed upon Allstate to exercise "reasonable diligence" to secure Peeler's cooperation. *Colson v. Lloyd's of London, supra.* Riffe's argument, from a pragmatic standpoint, appears to be that Allstate should be penalized, i.e., precluded from denying coverage, because it diligently attempted to secure Peeler's cooperation. Moreover, Riffe's argument ignores one of the essential elements of estoppel. As held in *Martinelli v. Security Insurance Company of New Haven,* 490 S.W.2d 427, 433 (Mo.App.1972), "[a]nother essential element [of estoppel] is that there must be a showing of reliance—that the injured party relied on the conduct of the insurer *or was misled by it to his prejudice.*" (emphasis added) As related to the instant case, the record discloses that prior to entry of the default judgment on the issue of liability counsel for Peeler advised Riffe's attorney of record by mail of Peeler's "extreme uncooperativeness" and if counsel's continued efforts to secure Peeler's cooperation failed the only course "left open" would be to advise Allstate to deny coverage.

In view of the above, Riffe cannot realistically argue at the present time that Allstate was estopped to deny coverage because it failed to do so "when the issue of noncooperation first arose." Prior to the time Riffe committed herself to obtaining a default judgment on the issue of liability and proving up damages she had been advised that Peeler's continued refusal to cooperate would leave no course open to Allstate but to deny coverage. Thus, Riffe neither relied on nor was misled by Allstate's failure to deny coverage at the very outset. Riffe's theory of estoppel fails for want of an essential element. *Martinelli v. Security Insurance Company of New Haven, supra.*

Riffe's second point is also bifurcated, thereby necessitating its division for dispositional purposes. Riffe first asserts that the trial court erred in finding that Peeler's failure to cooperate "authorized" Allstate to deny coverage. The argument tendered in support thereof, if correctly perceived by this court, is repetitive of two of the arguments offered in support of point one—"estoppel" and failure of Allstate to prove "substantial prejudice". These arguments have been fully addressed and disposed of adversely to Riffe, supra, and further discussion would be an exercise in redundancy.

■ The remaining aspect of Riffe's second point, "permitting withdrawal of insurance coverage after trial on damages is contrary to the intent of § 379.203, RSMo 1978 [uninsured motorist coverage required]", particularly the argument in support thereof, is, to say the least, both innovative and difficult to comprehend. The crux of Riffe's argument appears to fault or take issue with the holding in *Harrison v. MFA Mutual Insurance Co.,* 607 S.W.2d 137, 144 (Mo. banc 1980), that the term "uninsured motor vehicle" refers "to a vehicle whose operator or owner did not have in effect *at the time of the accident* an automobile liability policy with respect to the motor vehicle involved in the accident." (emphasis added) Riffe argues de hors the record that *Harrison v. MFA Mutual Insurance Co., supra,* precluded recovery by her under the uninsured motorist coverage

provided by another policy of insurance (Farmers Insurance Exchange). If correctly perceived, Riffe contends that breach of a cooperation clause and denial of coverage posited thereon after an accident thwarts the purpose of uninsured motorist coverage. Conduct by an insured constituting breach of a cooperation clause and grounds for denial of coverage, in the context at hand, inevitably follows, rather than precedes, the occurrence of an accident. Nothing is found in § 379.203, supra, (or as amended, § 379.203, RSMo Supp.1984), indicative of a legislative intent to excise or render unenforceable cooperation clauses in automobile liability policies. The real thrust of Riffe's argument, however camouflaged, is that *Harrison v. MFA Mutual Insurance Co., supra,* should not be followed and that she should not be barred from compensation for her injuries under the uninsured motorist coverage of another policy, an issue totally foreign to the instant appeal.

Judgment affirmed.

All concur.